IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FLAVIUS N. EURISTHE and<br>KIMILA S. EURISTHE,<br><br>  Plaintiffs,<br><br>v.<br><br>WILLIAM P. BECKMANN,<br> *et al.*,<br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§   No. 4:23-cv-00653-O-BP<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the request for a temporary restraining order contained in the "Original Petition and Application for Temporary Restraining Order and Temporary Injunction Stop Non-Judicial Foreclosure Sale # 113037-TX on July 5th, 2023" ("the Petition") filed by Plaintiffs Flavius and Kimila Euristhe on June 27, 2023. ECF No. 5. The case was filed and referred to the undersigned on June 26, 2023. ECF Nos. 1 and 2. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Plaintiffs' request for a temporary restraining order. ECF No. 5.

**I.    BACKGROUND**

This suit involves a residential property in Tarrant County that Plaintiffs purchased in March 2021. ECF No. 5 at 1. On June 26, 2023, Plaintiffs filed suit alleging that Defendants violated their rights under the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and federal copyright laws. ECF No. 1 at 1, 18-29. The following day, they filed the Petition, requesting a temporary restraining order ("TRO") to stop the nonjudicial foreclosure sale of their

property scheduled for July 5, 2023. ECF No. 5. The Complaint and Petition further request that the Court cancel the original promissory note and deed of trust by which the Plaintiffs acquired the property at issue for lack of consideration, usury, material misrepresentation, and fraud in the inducement and in fact. *See* ECF Nos. 1 and 5.

## II.   LEGAL STANDARD

A TRO is "extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999). A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2001) (citing *Hassani v. Napolitano*, No. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. Jul. 15, 2009).

In the Fifth Circuit, the four prerequisites for obtaining preliminary injunctive relief, including a TRO, are:

> (1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The party seeking injunctive relief must clearly carry the burden of persuasion on all four *Callaway* prerequisites to prevail. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Given the extraordinary nature of preliminary injunctive relief, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.* (citing *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Callaway*, 489 F.2d at 576)).

It is also well settled that the issuance of a preliminary injunction freezes the status quo and is intended "to preserve the relative positions of the parties until a trial on the merits can be held." *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) (Preliminary injunctions seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned).

### III. ANALYSIS

#### A. Plaintiffs have not provided notice to Defendants as the rules require.

The Federal Rules of Civil Procedure only allow for issuance of a TRO without notice if:

> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Plaintiffs have not served Defendants with process, nor have they shown any efforts to give them notice, including a Certificate of Service that is required when filing the Petition. *See* ECF No. 5. Further, Plaintiffs have not attached an affidavit to their motion showing that immediate and irreparable injury, loss, or damage will result to them before the adverse party can be heard in opposition. Nor have Plaintiffs certified in writing that they made any efforts to give notice to Defendants and the reasons why the notice should not be required. Fed. R. Civ. P. 65(b)(1)(B). Plaintiffs' request only indicates that they previously "made a plea to the defendants… on June 6, 2023, they received it on June 13, 2023 and failed to respond after 21 days." ECF No. 5 at 2. Accordingly, Plaintiffs have not satisfied either requirement for the issuance of a TRO under Rule 65(b)(1).

### B. Plaintiffs' TRO Request Does Not Meet the Legal Requirements.

Even had Plaintiffs' request for a TRO been in proper form, the Court still should deny their request. Plaintiffs have not established the four prerequisites that the Fifth Circuit requires.

#### 1. No substantial likelihood of success on the merits.

##### a. Sovereign citizens

Plaintiffs contend that they are American Nationals as of October 2022 under 8 U.S.C. § 1101(21)(a) such that they are "protected people with diplomatic immunity." ECF No. 1 at 5. Such sovereign-citizen legal arguments are indisputably meritless. So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States citizens. *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). They assert as grounds for this belief the Uniform Commercial Code, maritime and admiralty law, the idea of strawman trusts, and Bible verses. *E.g., Mason v. Anderson*, No. CV H-15-2952, 2016 WL 4398680, at *2 (S.D. Tex. Aug. 18, 2016).

Sovereign citizens often attempt to use these beliefs to "avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt*, 100 Fed. Cl. at 282. However, these persons cannot claim to be sovereigns independent of governmental authority while they simultaneously ask the judicial system to grant them recourse. *Mason*, No. CV H-15-2952, 2016 WL 4398680, at *2. Courts routinely dismiss sovereign citizen claims. *Id.*; *see also, e.g., Berman v. Stephens*, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (collecting cases) ("His reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous.") The same or similar arguments have been repeatedly rejected by other courts and are rejected by this Court. The great bulk of this complaint consists of lengthy recitations of case authorities and pronouncements

espousing a discredited political theory. Most relevant, Plaintiffs contend that because of their self-proclaimed "sui juris" status separate and apart from the Common Law, they have the right to revoke "all unconscionable contracts from [their] past." ECF No. 1 at 6. Plaintiffs' sovereign-citizen arguments that state and federal laws do not apply to them are without legal support and are patently frivolous.

Plaintiffs next argue that the property in question is "land patent" because it was once owned by the government, and as such it cannot be taken for debt or taxes. ECF No. 1 at 6-7. They contend that land patent cases can only be heard in an "Article III Court." *Id.* Contrary to their argument, the rule is that once land has passed from ownership by the government, the land, like all other property, is subject to the law of the state in which it lies. *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 377 (1977). Thus, claims affecting such land is a matter of state law. *Id.* The Court should decline to exercise supplemental jurisdiction over the state law claims related to the property in dispute arising from any such "land patent" claims. *See Pennie v. Obama,* 255 F. Supp. 3d 648, 677 n.5 (N.D. Tex. 2017).

### b. TILA

TILA provides a borrower with the right to rescind a loan when a mortgage secures the loan, and the creditor fails to make certain material disclosures required by the Act. *See* 15 U.S.C. § 1635. To state a TILA claim, Plaintiffs must allege a defect in the lender's "material" disclosures. *Id.* TILA also expressly provides that the right of rescission "does not apply to residential mortgage transactions," such transactions being those "in which a mortgage [or] deed of trust ... is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *Turner v. Nationstar Mortg. LLC,* No. 3:14-cv-1704-L, 2015 WL 9918693, at *8 (N.D. Tex. Nov. 13, 2015) (citing 15 U.S.C. §§ 1635(e)(1), 1602(w); *Gipson v. Deutsche Bank*

*Nat'l Trust Co.*, No. 3:13-cv-4820-L, 2015 WL 2069583, at *10 (N.D. Tex. May 4, 2015) *rec. adopted*, 2016 WL 302342 (N.D. Tex. Jan. 25, 2016), *aff'd* 680 F. App'x 359 (5th Cir. 2017) (per curiam) (Because Plaintiffs did not allege that the loan was for something other than the acquisition or construction of their home, Plaintiffs were not entitled to rescission under TILA.)).

Here, Plaintiffs claim that Defendants violated TILA by unlawfully foreclosing on their property. ECF No. 1 at 28. However, Plaintiffs do not allege which Defendants allegedly violated the Act and state no facts to support such a theory of liability. Because Plaintiffs cannot show that any of the Defendants, including the originator of the loan at issue, failed to make any disclosures required under the Act or that they are even entitled to the right of recission under the Act, Plaintiffs are not likely to succeed on the merits of a claim under TILA. *Searcy v. Wells Fargo Home Mortg.* No. 3:14-cv-3411-B, 2015 WL 1182836 (N.D. Tex. Mar. 16, 2015).

### c. RESPA

RESPA protects borrowers, in part, by prohibiting predatory practices in the lending and servicing of federally related mortgage loans. *See* 12 U.S.C. §§ 2601(a), 2605-2608; *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-cv-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011). The Court liberally construes Plaintiffs' RESPA claim to refer to section 2604. ECF No. 1 at 28. Plaintiffs provide no facts to support any claim under this section or the rest of the Act. Title 12 U.S.C. § 2604, which "outlines the disclosures which lenders must provide borrowers," does not create a private right of action "against mortgage lenders who fail to make such disclosures." *Duke v. H & R Block Bank*, No. 10-CV-01927-REB-KLM, 2011 WL 1060656, at *4 (D. Colo. Mar. 8, 2011); *see also Flores v. Wells Fargo Bank, National Association*, No. 4:12-CV-77, 2013 WL 12140954, at *3 (E.D. Tex. Mar. 29, 2013) ("There is no private cause of

action created by section 2604."). Because Plaintiffs' RESPA claim does not state a plausible claim for relief, they are unlikely to succeed on the merits of that claim.

### d. RICO

RICO provides civil liability relief for activities that violate 18 U.S.C. § 1962 and harm the plaintiff. To bring an action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985); *see also Crowe v. Henry,* 43 F.3d 198, 204 (5th Cir. 1995). The threshold requirement for stating a civil cause of action under RICO is that that the plaintiff must be " 'injured in his business or property by reason of a violation' of the [RICO]'s substantive restrictions." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1964(c)); *see also Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 422 (5th Cir. 2001). Thus, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation." *Anza,* 547 U.S. 451 at 453. Pecuniary consequences are not compensable claims under RICO. *See, e.g., Fisher v. Halliburton,* H-05-1731, 2009 WL 5170280 at *5 (S.D. Tex. Dec. 17, 2009) (holding that plaintiffs' alleged loss of "continued compensation" directly was not a cognizable injury under RICO).

With no factual or legal support, Plaintiffs here allege that Defendants "conspired against the working-class population of Tarrant County, Texas state to submerge the common people in a mountain of perpetual and unpayable debt." ECF No. 1 at 26. Defendants "intend to reduce the people to a class of deceived debt-bound tenants… in a society that tolerates and enforces blatant disregard for the unalienable human right to property in a collectivist environment of ever-expanding corporate feudalism." *Id.* Plaintiffs also allege that Defendants regularly engage in

cooperative effort to "deprive the public of property… where [people] are systematically loaned 'credit' when they were led to believe they were being loaned 'real money of substantial value.'" *Id.* at 27-28. Plaintiffs provide no facts to support that they have standing to assert any such claims or that any Defendants engaged in racketeering activity under the law, that there was any RICO enterprise, or that any violation of the law caused them damage. Thus, Plaintiffs' have not shown that they are likely to succeed on the merits of their RICO claim.

### e.     Miscellaneous Claims

Finally, Plaintiffs state that they are seeking damages for other violations such as fraud, usury, misrepresentation, and copyright infringement allegedly committed by Defendants and/or their employees during the foreclosure process, thereby invalidating the foreclosure sale and the note and deed. ECF Nos. 1 at 18-28; 5 at 2-4. These claims are not appropriate for a TRO meant to maintain the status quo until a hearing on the merits can occur. *Wenner,* 123 F.3d at 326. Further, unsupported conclusory statements such as Plaintiffs' allegations in their motion are insufficient to demonstrate entitlement to the extraordinary relief of a TRO. *See Hunt v. Bankers Trust Co.,* 646 F. Supp. 59, 66 (N. D. Tex. 1986). Plaintiffs' complaint, although verified, is also likewise insufficient to establish the requirements for a TRO.

### 2.     No irreparable harm.

To satisfy the second element of the preliminary injunction standard, Plaintiffs must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008). Plaintiffs offer no arguments, authority,

or evidence to show that a judgment for money damages would not cure any harm resulting from foreclosure. *See* ECF Nos. 1, 5.

Though Plaintiffs do not directly explain why the foreclosure sale would cause irreparable harm, the loss of a home has been found to cause an irreparable injury. *See Belknap v. Bank of America, N.A.*, G-12-198, 2012 WL 3150271, at *3 (S.D. Tex. Aug. 1, 2012) (citation omitted); *see also U.S. v. Goltz*, SA-06-CA-503-XR, 2007 WL 295558, at *3 (W.D. Tex. Jan. 25, 2007) (loss of property is usually considered an irreparable injury). However, irreparable harm alone will not support equitable relief because "the likelihood of success is the main bearing wall" of the test." *Belknap* 2012 WL 3150271 at *3; *see also Goltz*, 2007 WL 295558, at *3.

### 3. Balance of harms does not favor Plaintiffs.

The third element requires Plaintiffs to show that the threatened injury outweighs any harm the injunction might cause. *See Winter*, 555 U.S. at 23. Plaintiffs do not address this element in their Motion or Petition. *See* ECF Nos. 1, 5. Thus, they have not met their burden on the third element of the preliminary injunction standard. *See Thompson v. Hughes, Watters & Askanase, LLP*, No. 3:13-cv-429-G-BH, 2013 WL 705123, at *3 (N.D. Tex. Jan. 31, 2013), *rec. adopted* 2013 WL 705883 (N.D. Tex. Feb. 27, 2013).

Further, "Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default," *Douglas v. NCNB Texas Nat'l. Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992), and "judicial foreclosure and the ability of a trustee to foreclose under the power of sale in a deed of trust [or mortgage] are separate and distinct remedies, either of which the trustee may elect to pursue." *In re Erickson*, 566 F. App'x 281, 284 (5th Cir. 2014) (per curiam). Thus, Plaintiffs cannot show that foreclosure of their property, albeit upsetting, is more harmful than mortgage companies and lenders allowing mortgagors to stay in their homes without paying their mortgages.

9

### 4.     Public policy does not support issuance of a TRO.

The final element requires a showing that the injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiffs do not address why enjoining the foreclosure sale is in the public interest, and other courts have found that this factor is neutral because a prospective foreclosure sale impacts only the parties to the suit. *See Thompson*, 2013 WL 705123, at *3; *see also Belknap*, 2012 WL 3150271, at *3.

## IV.    CONCLUSION

Because Plaintiffs have not properly served notice of their request for a TRO on the Defendants and have not met the legal requirements for issuance, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** Plaintiffs' request for a Temporary Restraining Order. ECF No. 5.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on June 30, 2023.

                                                Hal R. Ray, Jr.
                                                UNITED STATES MAGISTRATE JUDGE